IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WARREN E. CHRISTENSEN,<br><br>  Plaintiff,<br><br>  v.<br><br>JO ANNE B. BARNHART, Commissioner of Social Security,<br><br>  Defendant. | No. C 05-01961 WHA<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO REVERSE THE COMMISSIONER'S DECISION AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT** |

## INTRODUCTION

In this social security appeal, plaintiff Warren E. Christensen seeks reversal of an administrative law judge's determination that he was not entitled to benefits pursuant to 42 U.S.C. 405(g). This order finds that the ALJ had a substantial basis for determining that plaintiff did not qualify for disability benefits as a result of his heart condition. The order further finds that the ALJ fully developed the medical record and properly denied plaintiff's motion to obtain a psychiatric evaluation to address his possible depression. Accordingly, plaintiff's motion for summary judgment is **DENIED** and the commissioner's cross-motion for summary judgment is **GRANTED**.

## STATEMENT

**1.    PROCEDURAL HISTORY.**

Plaintiff Christensen originally filed for disability benefits on June 10, 1996. This appeal to the district court is his third.

The Social Security Administration first denied plaintiff's application for benefits on August 21, 1996. Plaintiff subsequently requested reconsideration, which was denied. Plaintiff next sought ALJ review, and a hearing was held before ALJ Robert W. Johnson on April 30, 1998. On June 9, 1998, ALJ Johnson issued a decision upholding the SSA's determination that plaintiff was not eligible for disability benefits. ALJ Johnson found that plaintiff did not have a "severe" impairment which began on or before December 31, 1985, the date that he was last insured for benefits under Title II.

Plaintiff requested review of the ALJ's decision on August 7, 1998, and submitted further medical evidence in the form of a medical report from Dr. Paul Anderson on January 27, 1999. The appeals council denied the request. Plaintiff subsequently sought judicial review. On October 9, 2000, this Court issued its order reversing the denial of disability benefits and remanding the matter to the ALJ to fully evaluate the record.

Upon remand, ALJ Johnson again issued a decision denying plaintiff's claim on February 19, 2000. The ALJ ruled that under the five-step analysis required by the SSA, plaintiff *did* have "severe" coronary artery disease but that he was able to perform a full range of sedentary activities prior to December 31, 1985. Accordingly, plaintiff was not disabled as per Medical-Vocational Rule 201.24. Upon plaintiff's request for review, the appeals council upheld ALJ Johnson's decision.

The parties subsequently entered into a stipulation and order of remand. On January 22, 2003, Magistrate Judge Edward M. Chen directed that medical expert testimony would be obtained "as to the nature, severity, and limiting effects of Plaintiff's impairments on or before December 31, 1985 and, as needed, whether Plaintiff has been continuously disabled since that time. The ALJ [was to] evaluate medical opinion evidence and indicate the weight given and the reasons for that weight."[1]

At the subsequent hearing before ALJ Donald F. Rector, the testimony of Dr. David West was heard. On April 29, 2004, the ALJ again denied plaintiff's claim. Relying on Dr.

---

[1] When plaintiff filed this appeal for the second time in June 2002, the parties consented to proceed before a United States Magistrate Judge. Accordingly, Magistrate Judge Chen handled the matter at that time and ultimately approved the parties' stipulation of remand in January 2003.

2

West's opinion, ALJ Rector ruled that under the five-step SSA analysis, plaintiff was not disabled on or prior to the date last insured because he was able to perform sedentary work. The appeals council again affirmed the ALJ's decision on March 16, 2005. Plaintiff filed a request for judicial review on September 21, 2005 pursuant to 42 U.S.C. 405(g). Defendant subsequently filed a cross-motion for summary judgment.

### 2. THE ADMINISTRATIVE HEARING.

The third and most recent administrative hearing took place before ALJ Rector. At the time of the hearing, plaintiff was a 62-year-old individual with an eleventh-grade education (AR 552). Plaintiff explained that prior to the alleged onset of his disability, he worked as a truck driver and as the co-owner of a furniture store (AR 639, 645). The ALJ found both of these positions to be "semi-skilled" to "skilled" occupations requiring medium to heavy levels of exertion (AR 552). As a truck driver, plaintiff served as a delivery attendant, whose responsibilities included lifting and unloading packages. As the owner of the furniture store, his duties included unpacking, ordering, delivering and selling furniture (AR 639).

Plaintiff testified that his alleged disability began as far back as 1981, when he started to feel "badly." Despite the fact that he had been energetic his entire life, plaintiff began to feel as though he had absolutely no energy. He was fatigued and felt emptiness (AR 641). Rather than going to work, a typical day consisted of plaintiff's taking one to two naps because he was constantly tired (AR 640). Plaintiff also noted that he was forced to sell his business of more than seven years in 1984 because he was no longer able to meet the requirements of the job (AR 638).

At the hearing, plaintiff's attorney further explained that plaintiff's activity level dropped in 1985, but that plaintiff did not seek medical attention because he believed he was tired as a result of stress. The attorney also informed the ALJ that plaintiff did not attempt to return to work until either 1986 or 1987, and that when he returned, he only took an on-call position as a truck driver. Even so, the attorney explained that plaintiff was unable to maintain his job and that he only worked several days a week, for three to four month stints. Eventually, the job ended because plaintiff was not "dependable enough to maintain work" (AR 635).

3

### 3. **MEDICAL EVIDENCE.**

The medical evidence was summarized in ALJ Rector's decision (AR 544–62). This order briefly reviews the most significant findings of the physicians that examined plaintiff.

Plaintiff did not seek medical care regarding his fatigue or heart condition until October 1987, at which point he went to a doctor after suffering two weeks of intense chest pain (AR 555). Upon his visit, Dr. Robin S. Heller treated plaintiff and discovered evidence of unstable angina. Plaintiff was immediately hospitalized and underwent cardiac catheterization and a balloon angioplasty to open a 90-percent blockage of his arteries. After the visit, plaintiff's physicians prohibited him from driving and lifting any weight greater than 50 pounds. As a result, he has not maintained a steady job since 1987 (AR 644).

Plaintiff also alleges that he first saw Dr. Daniel Klein, an internist, in October 1985. Even so, no evidence exists to show that Dr. Klein treated or examined the claimant prior to 1996, 11 years after the insurance expiration date (AR 262). In February 1998, Dr. Klein noted that claimant had again begun to experience unstable angina (AR 555).

Dr. Paul Anderson performed a consultative evaluation of plaintiff in December 1998 (AR 263). The purpose of the examination was to evaluate plaintiff's level of impairment in 1985 and to determine whether he had remained unable to do any significant activity since then (AR 558). Unlike Dr. Klein and Dr. Heller, Dr. Anderson never treated the claimant and saw him only for the purpose of proving disability (AR 263). Dr. Anderson concluded that plaintiff suffered from a significant cardiac impairment in 1985 and also that such impairment prevented him from doing any substantial activity. He noted that plaintiff had a progressive disorder that probably started in 1984 (AR 558).

Dr. David West was called as a medical expert to the hearing before ALJ Rector on February 26, 2004. After reviewing the evidence of record and listening to plaintiff's testimony, Dr. West indicated that plaintiff probably would have met the required severity of Appendix 1 (and qualified for SSA disability benefits) during the two weeks prior to his angioplasty and stent placement in 1987. He testified that plaintiff's descriptions of fatigue and napping in 1985 did not correlate with cardiovascular disease, but may have been an element of

depression (AR 664). He also explained that plaintiff's exertional intolerance, but not sleeping, may have been a symptom of coronary artery disease (AR 665). Thereafter, Dr. West noted that plaintiff demonstrated great improvement during his post-1987 treadmill exercises and that plaintiff subjectively indicated he was asymptomatic after his 1987 angioplasty. As a result, Dr. West also indicated that plaintiff was probably not disabled again until 1995, when he underwent further heart surgery (AR 558).

At the hearing before ALJ Rector, plaintiff further testified that he has had five surgeries since 1995 (AR 636). In filing for SSA benefits, plaintiff alleged disability due to "bilateral frozen shoulders and cardiac problems" beginning August 31, 1985 (AR 552).

## ANALYSIS

**1.    LEGAL STANDARD.**

A reviewing court shall uphold a decision denying disability benefits if it is supported by substantial evidence and is free of legal error. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Substantial evidence is "more than a scintilla," but "less than a preponderance." *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." A district court must "review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion." *Andrews*, 53 F.3d at 1039. On appeal, a district court should consider both the ALJ's decision and the additional materials submitted to the appeals council. *Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Accordingly, the ALJ's decision must be upheld where evidence is susceptible to more than one rational interpretation.

A claimant bears the burden of proving disability. *Andrews*, 53 F.3d at 1040. The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. 423(d)(1)(A).

Disability claims require a five-step inquiry. 20 C.F.R. 404.1520. In the first four steps, the ALJ must determine: (1) whether the claimant is working; (2) the medical severity and duration of the claimant's impairment; (3) whether the disability is severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4; (4) whether the claimant is capable of performing his or her previous job; and (5) whether the claimant is capable of making an adjustment to other work. 20 C.F.R. 404.1520(a)(4)(i)-(v). At step five, "the burden shifts to the Secretary to show that the claimant can engage in other types of substantial gainful work that exists in the national economy." *Andrews*, 53 F.3d at 1040.

**2.     THE ALJ'S FIVE-STEP ANALYSIS.**

In his five-step analysis, ALJ Rector considered "all symptoms, including pain, and the extent to which [plaintiff's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 C.F.R. 404.1529." He also considered all medical opinions, which are statements from acceptable medical sources that reflect judgments about the nature and severity of the impairments and resulting limitations (AR 554–55).

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since his alleged onset date in August 1985. In particular, the ALJ found that the wages plaintiff received during 1986 and 1987 were not sufficient to constitute gainful activity (AR 554). Such work activity is to be determined in relation to plaintiff's allegations of a disabling heart impairment beginning on or before the December 1985 last insured date. Though the earnings were measured in 1986 and 1987, up to one year past the dated last insured, the ALJ gave plaintiff the benefit of the doubt and found that he had not engaged in such activity since his alleged onset date.

At step two, the ALJ found plaintiff's impairment to be "severe" within the meaning of the regulations (AR 554). The ALJ found that plaintiff's coronary artery disease significantly limited his physical or mental ability to do basic work activities, as required by 20 C.F.R. 404.1521.

At step three, however, the ALJ found that plaintiff's impairments, taken either

6

singularly or in combination, did not produce findings or symptoms severe enough to meet or medically equal one of the impairments in Appendix 1, Subpart P, Regulations No. 4, on or prior to the date last insured. In addition, the ALJ found that the claimant had produced insufficient evidence that he suffered from an impairment or combination of impairments of disabling or Appendix 1-level severity, which began on or before the date last insured, and which lasted or could be expected to last for twelve months (AR 554).

A claimant whose impairments do not meet Appendix 1-level severity can, in the alternative, demonstrate that his impairment prevented him from doing his past relevant work. At step four, the ALJ found that plaintiff was *unable* to perform any of his past relevant work (AR 554). Nonetheless, at step five, the ALJ found that plaintiff retained the residual functional capacity to perform a full range of sedentary work. 20 C.F.R. 404.1567. Because the commissioner met its burden of demonstrating that other work existed in significant numbers in the national economy that accommodated plaintiff's residual functional capacity and vocational factors, the ALJ found that plaintiff was not disabled (AR 563).

Plaintiff appeals the ALJ's findings on two grounds. *First*, plaintiff contends that the ALJ's decision was not supported by substantial evidence (Br. 9). In particular, plaintiff argues that the commissioner erred in: (1) rejecting Dr. Anderson's report in favor of Dr. West's report; and (2) applying the wrong standard for evaluating plaintiff's complaints of fatigue and his wife's testimony. *Second*, plaintiff contends that the ALJ failed to fully develop the record (Br. 9). In particular, plaintiff argues that the ALJ should have ordered defendant to conduct further inquiry as to his possible depression (Br. 15).

**A.     Dr. Anderson's Report**.

Our circuit distinguishes between three types of physician opinions:

> (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians).

*Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). As a general rule, the ALJ must give controlling probative weight to a treating physician if such opinion and conclusions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not

7

1  inconsistent with the other substantial evidence in [a] case record." 20 C.F.R. 404.1527. Even
2  if another physician's opinion contradicts the treating physician's opinion, the ALJ "may not
3  reject [the treating physician's] opinion without providing specific and legitimate reasons
4  supported by substantial evidence in the record for doing so." *Lester*, 81 F.3d at 830 (internal
5  citation omitted).

6  Plaintiff attacks the ALJ's findings for denying proper weight to Dr. Anderson's opinion
7  (non-treating, examining physician) and giving too much weight to Dr. West's opinion (non-
8  treating, non-examining physician). Dr. Anderson was not a treating medical source, however.
9  Both physicians were asked to deduce conclusions regarding plaintiff's medical condition years
10 before they met him. Dr. Anderson was therefore in no better position than Dr. West to
11 evaluate plaintiff's claim.

12 In fact, it is the duty of the ALJ to determine the credibility of testifying experts.
13 *Andrews*, 53 F.3d at 1039. The ALJ may reject the testimony of an examining, but non-treating
14 physician, in favor of a non-examining, non-treating physician when he gives specific,
15 legitimate reasons for doing so, and those reasons are supported by "substantial evidence."
16 *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995). The Ninth Circuit has explicitly held that
17 a non-treating physician's testimony constitutes "substantial evidence" when it is consistent
18 with the medical record. *Magallanes v. Bowen*, 881 F.2d 747, 752 (9th Cir. 1989).

19 The ALJ did just as *Roberts* prescribed. *First*, the ALJ specifically explained that Dr.
20 West's testimony was consistent with the testimony of both plaintiff's treating physicians and
21 the rest of the medical record. As the ALJ noted and Dr. West concluded, there was no *medical*
22 evidence of any heart problem until October 1987, nearly two years after plaintiff's disability
23 insurance expired (AR 555).

24 *Second*, the ALJ gave specific and legitimate reasons for rejecting Dr. Anderson's
25 testimony. Dr. Anderson's testimony was neither well-supported nor consistent with the
26 medical evidence. In particular, the ALJ noted that:

27 • Claimant did not seek medical treatment until 1987, and at that time, claimant
28    stated that he had experienced only a two-week history of unstable angina

8

(AR 555). Nonetheless, Dr. Anderson concluded, incredibly, that the evidence was "overpowering" and that plaintiff had an impairing degree of coronary artery disease "well before" 1985 (AR 558);

- Dr. Anderson stated that "it [was] medically probable that [plaintiff] developed his symptomatic coronary disease progressively over a number of years [and that it only] became unstable in October of 1987." The ALJ found such a confident statement improbable considering the lack of medical evidence or even medical treatment on or prior to December 31, 1985.

- Dr. Anderson falsely stated on page 9 of his report that Dr. Heller concluded plaintiff to be disabled from work on or before December 31, 1985. Dr. Heller made no such conclusion and instead specifically noted that he was unable to answer the question of whether plaintiff was disabled on or before the date last insured because his first contact with plaintiff was in 1987 (AR 557).

The ALJ used proper discretion in determining that Dr. West's testimony was more credible than Dr. Anderson's testimony. He provided a thorough and legitimate explanation of why he did not afford Dr. Anderson's opinion controlling weight.

Furthermore, the ALJ properly concluded that the medical evidence was consistent with all medical findings and conclusions, except for those provided in Dr. Anderson's report (AR 556).

Finally, even if plaintiff's coronary artery disease did exist in 1985, it was nevertheless reasonable for the ALJ to find that it would not have prevented plaintiff from performing sedentary-level work, given the absence of any contemporaneous evidence of objective impairment until two years later. In any event, where evidence is susceptible to more than one interpretation and the ALJ's finding is rational — as it is here — it must be upheld by the reviewing court. *Andrews*, 53 F.3d at 1039–40.

### B. Standard for Evaluating Plaintiff's Complaints.

Plaintiff next contends that the ALJ improperly disregarded his wife's testimony. *First*, plaintiff argues that Social Security Regulation 96-7p requires the ALJ to consider all third-person statements regarding a claimant's symptoms and how they affected the claimant. This

9

order agrees. Plaintiff misconstrues the rule, however. The regulation only requires the ALJ to *consider* the witness comments, not to accept them as true. In fact, an ALJ is not required to believe every allegation of disabling pain, "or else disability benefits would be available for the asking." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

Here, the ALJ evaluated plaintiff's statements and his wife's statements in light of the medical evidence and other evidence, such as the plaintiff's daily activities and earnings, frequency and intensity of his fatigue, use of medications, and other factors concerning his functional limitations and restrictions due to his symptoms. The ALJ pointed specifically to inconsistencies in plaintiff's claim, like the fact that he claimed his symptoms began in 1981 but he also claimed he had only experienced a two-week period of chest pain at his 1987 medical visit. The ALJ found that claimant's own statements did not support a finding of a *disabling* level of symptomatology as of 1985. Furthermore, the ALJ rationally concluded that because claimant was willing to seek medical treatment as a result of his chest pain in 1987, his lifestyle must not have been curtailed to such a severely limited functional capacity before that date. Accordingly, it was properly within the discretion and fact-finding capacity of the ALJ to reject the testimony of plaintiff and his wife as less than completely credible (AR 560).

*Second*, plaintiff cites to this Court's order dated October 9, 2000, in support of his motion that the ALJ improperly denied consideration of Mrs. Christensen's testimony. There, the Court held that "[w]here the ALJ denied Mr. Christensen disability benefits on the ground that he did not suffer from a disability 'severe' enough as to have had more than a minimal effect upon his ability to work, the failure of the ALJ to properly address Mrs. Christensen's testimony constitutes legal error" (Oct. 2000 Order at 12).

The current action is distinguishable. The ALJ ruling in question there held that plaintiff was *unable* to satisfy his burden for step two of the five-step SSA evaluation. The ruling at issue in this appeal held that plaintiff's disability *was* sufficiently "severe" to meet the SSA requirements and that he therefore passed step two. Only step five is in contention here — whether plaintiff could have performed sedentary work on or before the date last insured. Even if the first ALJ was wrong to disregard Mrs. Christensen's testimony in determining whether

plaintiff's disability was sufficiently "severe," Mrs. Christensen's testimony is not necessarily relevant in the determination of whether plaintiff could engage in other sedentary work.

Additionally, the October 2000 order found that the ALJ's ruling was legal error because he ignored third-person testimony that was corroborated by medical evidence. Here, no medical evidence supports Mrs. Christensen's testimony that plaintiff was unable to perform sedentary work on or before December 31, 1985. The evidence demonstrates that plaintiff did not experience chest pain until 1987 (AR 646), and that he even earned $3000 in 1987. While these earnings did not constitute gainful activity, the evidence is sufficient to support as "rational" the ALJ's finding that plaintiff was able to perform sedentary work on or before the date last insured. Even Dr. Anderson's testimony does not support the conclusion that plaintiff was unable to perform any sedentary work before December 31, 2005. Where a lay person's testimony contradicts other evidence on the record, it is not a legal error for the ALJ to discount the testimony altogether. *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984).

### C. Failure to Develop the Record.

In the alternative, plaintiff claims that his symptoms may have been the result of depression beginning before December 1985 and that the ALJ should have obtained a psychiatric evaluation to assess his symptoms (Br. 15–16). Defendant contends that the ALJ exercised reasonable discretion in denying plaintiff's request. This order agrees with defendant.

The ALJ has a duty to fully and fairly develop the record. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). Ambiguous evidence, or an ALJ's own finding that the record is inadequate to allow for proper evaluation, triggers the ALJ's duty to conduct further inquiry.

Here, plaintiff testified that he took an anti-depressant medication "for a while" (AR 653). Plaintiff's wife, however, indicated that such treatment was not prescribed until 1995, ten years after the date last insured. Only in 1997 and 1999, twelve years after the 1985 coverage date, was plaintiff diagnosed with depression (AR 626–27). As a result, it was not unreasonable for the ALJ to find that the evidence did not support plaintiff's request for additional evaluations. This is particularly true because a claimant seeking disability benefits bears the burden of proof. It was plaintiff's responsibility to demonstrate that he suffered from

11

permanent or substantial disability in 1985. *Armstrong v. Comm'r Soc. Sec. Admin.*, 160 F.3d 587, 589 (9th Cir. 1998). Granting such a request would only reward plaintiff's fishing expedition for medical evidence to support his disability application, which was filed long after his insurance coverage expired.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is **DENIED**, and defendant's cross-motion for summary judgment is **GRANTED**. Judgment will be entered accordingly.

**IT IS SO ORDERED.**

Dated: August 14, 2006.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE